**John Francis CLINE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18942.**

United States Court of Appeals
Eighth Circuit.

May 22, 1968.

D. M. Statton, Boone, Iowa and Don J. Wilson, West Des Moines, Iowa, for appellant.

Claude H. Freeman, Asst. U. S. Atty., Des Moines, Iowa, for appellee; James P. Rielly, U. S. Atty. and Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, on the brief.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN OOSTERHOUT, Chief Judge.

Defendant John Francis Cline was indicted on a charge of robbing by force the federally insured Kellogg Savings Bank of Kellogg, Iowa, on or about February 14, 1967, taking $16,054 in money, and further charging that defendants in committing such act did assault and put in jeopardy the lives of Raymond W.

Welle and Pauline Welle by use of dangerous weapons, to wit, pistols, in violation of 18 U.S.C.A. § 2113(d). Gerald George Weir and David Lee Grandstaff were jointly indicted with the defendant upon such charge.[1]

Cline, who will hereinafter frequently be referred to as defendant, entered a plea of not guilty. His motion for a separate trial was granted and he was tried and convicted by a jury. His post-conviction motions were overruled. Cline was sentenced to fifteen years imprisonment with the provision that he be eligible for parole at any time under 18 U.S.C.A. § 4208(a) (2). This is a timely appeal from such conviction and sentence.

At all times here material, Raymond Welle was cashier and his wife, Pauline Welle, was assistant vice president of the Kellogg Savings Bank, a federally insured bank. About 9 p. m. on February 13, 1967, three men carrying pistols entered the Welle home at Kellogg, Iowa. Mrs. Welle was then at home alone. Mr. Welle, who had been working in the bank that night, returned home about 10 p. m. and was met at the door by one of the intruders armed with a gun. Mr. Welle was forced to go to the bank and open the cash vault. He was accompanied by Weir. Cline and Grandstaff remained at the Welle home keeping Mrs. Welle under surveillance. The Welles were told, "I have got a gun, don't do anything.", and were further told if Weir was not back within twenty minutes with the money, "It is going to be bad for Mrs. Welle."

The vault at the bank was opened; Weir took the contents amounting to $16,054. Weir and Welle returned to the Welle home. The Welles were tied hand and foot and adhesive tape was put over their mouths, whereupon the robbers left with the stolen money. It was past midnight when they left.

The robbers did not wear masks. Each wore gloves at all times. Cline wore a stocking cap which was pulled down over his sideburns and ears. Cline, Grandstaff and Weir were each positively identified by both Mr. and Mrs. Welle as the intruders. Cline was identified by his general size and appearance, his body build, his nose and mouth, his long pointed chin and his rough complexion from which it appeared he had some kind of skin trouble. Additionally, Mr. Welle who heard Cline testify identified him by his voice.

Cline testified as a witness. He admitted knowing about the contemplated robbery but denied knowledge of the exact time thereof or any participation therein. His testimony, supported by alibi witnesses offered, was that he was at the George Weir home in Des Moines at the time of the robbery, such home being at a considerable distance from Kellogg. He testified that he arrived at the George Weir home about 9 p. m. and that he spent the rest of the night there. Such testimony was supported by various alibi witnesses, most of whom were related to or connected with one or more of the indicted defendants.

Cline testified that Weir, Grandstaff and Mike See, whom Cline claims was the third robber rather than he, returned to the Weir home about 2 a. m. on February 14 and that they had with them a bag of money which they counted out in the amount of $16,000. Defendant testified that he then played poker with the robbers.

George Weir left for California on the morning of February 14 and upon arrival stayed at the home of his brother Larry. Cline as a witness stated that on February 15 he received information from a friend that the FBI wanted to interview him. He flew to California the next day, using an assumed name. Upon arrival there, he went to Larry Weir's home where George Weir was staying. Cline and George Weir were arrested at the Larry Weir home on Feb-

1. Weir and Grandstaff subsequent to defendant's trial and conviction entered pleas of guilty to the indictment and they were each convicted and given a twenty-year prison sentence. Neither Weir nor Grandstaff testified at Cline's trial.

ruary 18. The evidence will be discussed further to the extent necessary during the course of the opinion.

Defendant Cline urges that he is entitled to a reversal of his conviction by reason of the following asserted errors committed at his trial:

I. The prosecution's attack upon defense counsel's honesty.

II. The Welles' identification of the defendant while in a cell in jail in violation of defendant's Fifth and Sixth Amendment rights.

III. The allowance of evidence concerning defendant's exercise of his right to remain silent.

IV. The admission in evidence of a large sum of money in George Weir's billfold at the time of his arrest without proof of Weir's prior impecuniosity.

V. The overruling of defendant's motion for acquittal based upon insufficiency of the evidence to support a conviction.

VI. The refusal of the court to require the Government to produce a report made by FBI Agent Bugas covering his investigation of the case.

A careful study of the record in this case satisfies us that the court committed no prejudicial error in defendant's trial and that the judgment should be affirmed. The reasons for such conclusion are set out in our discussion hereinafter of the points urged, in the order above stated.

### I.

During the course of the redirect examination of Mrs. Welle, government counsel gave the witness some type of writing and asked her to read a specified portion thereof, and indicate how she identified the defendant by means of a picture of him. Defendant's counsel on cross-examination had attempted to use prior claimed inconsistent testimony to shake the identification. Defendant objected to the question, whereupon the following colloquy took place:

"MR. FREEMAN: You employed something other than complete honesty!

MR. WILSON: Your Honor, I move for a mistrial on that point.

THE COURT: Well, you can argue your case later.

MR. WILSON: I have never been accused of anything improper in court in my life.

THE COURT: Well, now, gentlemen, you are not going to argue your case now. You can argue it later. Get your exhibit back and let the witness testify from her memory. That's all we expect of her."

The trial court in effect sustained the objection to the question and overruled the motion for mistrial. At the close of all the evidence, defendant renewed his motion for mistrial upon the ground of the prejudicial effect of the remark heretofore set out and upon other grounds. In overruling the motion, the court stated:

"The Court does not consider that there were any comments of plaintiff's counsel here that were prejudicial. There was a certain amount of discussion between counsel sometimes in the heat of battle. However, I found nothing and I find nothing offensive in this record in that regard."

■ We consider the criticized remark of the prosecutor to be an improper one and we feel that the trial court might well have admonished the jury to disregard it. No request for an admonition was made.

■ We have recognized that counsel in the heat of battle often say things that should not have been said and that the prejudicial error test should be applied in determining whether such conduct has resulted in such unfairness and prejudice as to deprive defendant of a fair trial. See Keeble v. United States, 8 Cir., 347 F.2d 951, 956; Isaacs v. United States, 8 Cir., 301 F.2d 706, 737.

■ Considerable discretion must be left in the trial court who saw and heard the entire proceeding and thus had the feel of the case in determining whether an asserted error is prejudicial. Cochran v. United States, 8 Cir., 310 F.2d 585, 589; Isaacs v. United States, supra. We are not persuaded that the isolated remark of the government attorney made early in the trial had any substantial effect upon the verdict of the jury. The trial court did not abuse its discretion in denying the motion for a mistrial.

## II.

■ Mr. and Mrs. Welle were taken to the jail cell in which defendant alone was confined for the purpose of determining whether they could identify the defendant as one of the bank robbers. Prior to that time, the Welles had been shown some pictures, including that of the defendant in a high school annual and some blown up pictures of the defendant. Defendant was not represented by counsel in such proceeding nor was counsel waived. Defendant was not exhibited in a lineup. Defendant urges that such confrontation violates rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution under the teaching of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199. Such cases were all decided on June 12, 1967. *Stovall* squarely holds that the right to be represented by counsel at lineup proceedings, which right was established by Wade and Gilbert, applies only to confrontations for identification purposes conducted in the absence of counsel after June 12, 1967. Defendant was convicted by a jury on May 26, 1967. Consequently, the Sixth Amendment defense based on right to counsel at the lineup is not open to the defendant.

■ Still open, however, is defendant's right to prove "that the confrontation resulted in such unfairness that it infringed his right to due process of law."

Stovall v. Denno, supra, at 299, 87 S.Ct. at 1971. The confrontation must be "so unnecessarily suggestive and conducive to irreparable mistaken identification" based upon "the totality of the circumstances surrounding it" that due process is denied. Id. at 302, 87 S.Ct. at 1972. In *Stovall*, the Supreme Court upheld a hospital bed identification of the defendant, who was the only person presented.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court applied the same test to a federal prosecution as it had in the habeas corpus review of the state court conviction in *Stovall*. Before apprehension, Simmons was identified from photographs and the witnesses later made in-court identifications. After examining the circumstances, discussing proper identification procedure, pointing out the hazards inherent in improper procedures, and admitting that the identification process was far from ideal, the Supreme Court determined the procedure was not such as to deny Simmons due process of law. The conviction was affirmed. The Court states:

> "[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302 [87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199], and with decisions of other courts on the question of identification by photograph." 390 U.S. 377, 384, 88 S.Ct. 967, 971.

Facts significant in *Simmons* include the statement that the robbery took place in broad daylight; that the witnesses were able to plainly see the person identified as the robber for periods up to five minutes, and that the witnesses, notwith-

standing vigorous cross-examination, entertained no doubt about the validity of their identifications.

In our present case, the Welles had an opportunity to view the robbers, who wore no masks, in an amply lighted room for approximately three hours. The Welles remained firm in their identification based upon observations made when the intruders were in their home, despite vigorous cross-examination. The identifying witnesses in our present case were reliable, respectable, well-educated people holding executive positions, and were not persons likely to be coerced by officers into making a false identification. It is also significant that the Welles also positively identified George Weir and David Grandstaff as intruders, and as hereinabove pointed out, defendant in his testimony in effect pointed them out as the robbers of the bank. As previously noted, such defendants have subsequently been convicted of the charge upon their pleas of guilty.

We hold that there is no substantial evidence in the record before us which would support a finding that the identification of the suspects was coerced by the investigating officers.

We hold that when the standards prescribed in *Stovall* and *Simmons* are applied to the facts of the present case, defendant has failed to establish that his right to due process was denied him at his trial, and defendant has likewise failed to establish any prejudicial error in the identification procedure which would entitle him to a reversal.

### III.

Defendant's contention that his right to remain silent has been violated to his prejudice lacks merit. Defendant voluntarily testified as a witness at his trial. On cross-examination, he stated that he told Agent Kidwell in an interview that he did not rob the Kellogg bank. Kidwell, called as a rebuttal witness, testified that the defendant when interviewed by him on February 20, 1967, was specifically asked if he had

robbed the Kellogg bank and that the defendant refused to answer such question. No objection was interposed to such foundation testimony; thus no foundation has been laid for the preservation of the error for review.

Moreover, it is conceded that prior to the interview above referred to, the defendant after a full explanation of his rights signed a waiver of his right to remain silent. Defendant by taking the witness stand at the trial and by giving testimony that he told the agent that he had not robbed the bank, opened the door to the rebuttal testimony. See Grunewald v. United States, 353 U.S. 391, 419–420, 77 S.Ct. 963, 1 L.Ed.2d 931.

In our present case, the defendant is claiming that he did not make a statement to the agent that he was asserting his right to remain silent at the time of the interview. Thus defendant waived his right to remain silent on the subject matter under discussion by claiming that he told the agent that he had not participated in the robbery. By offering himself as a witness at the trial, he subjected himself to the usual rules of cross-examination and impeachment. See Vitali v. United States, 1 Cir., 383 F.2d 121, 123.

### IV.

We are convinced that no prejudicial error was committed in receiving in evidence Exhibit 18, a billfold bearing George Weir's name containing two $100 bills, which was seized at the apartment at the time of the arrest of George Weir and the defendant. Absent a showing of impecuniosity, the finding of such amount of money would have little weight in establishing guilt. Defendant has not in any manner pointed out how he was prejudiced by the reception of this evidence. Defendant as a witness had previously testified that Weir and his associates brought into Weir's home the $16,000 proceeds of the robbery. In the light of such evidence, the finding of $200 in Weir's billfold could not in our view have any prejudicial effect upon the defendant.

## V.

■ Defendant urges that the court erred in denying his motion for acquittal made at the close of the government's case. After such motion was overruled, the defendant offered evidence in his own behalf. By so doing, he waived the motion for acquittal made at the close of the government's case. United States v. Calderon, 348 U.S. 160, 164, 75 S.Ct. 186, 99 L.Ed. 202.

■ Defendant did renew his motion for acquittal at the close of all of the evidence and such motion is entitled to consideration. The sufficiency of the evidence challenge, however, must be based upon the entire record including the evidence of the defendant.

■ The positive identification of the defendant by both the Welles as one of the bank robbers alone is sufficient to sustain the conviction. We have heretofore, at point II, rejected defendant's contention that the reception of such evidence violated defendant's constitutional rights. Since such evidence alone is enough to support the conviction, detailed discussion of circumstantial evidence is unnecessary.

## VI.

Lastly defendant urges that the court erred in not requiring the government to produce a report made by FBI Agent Bugas on February 20, 1967, covering his investigation of this case. Such statement, court Exhibit 1, was examined by the court in camera. It has been certified to us and we have examined the exhibit. The substance of the report is that Bugas searched the Welles' house and its immediate surroundings for finger prints or other evidence that could be used to connect defendant with the invasion of the Welles' home, and that no such evidence was found. The government turned over all other reports of Bugas to the defendant. With respect to Exhibit 1, the government urged that pursuant to 18 U.S.C.A. § 3500(c) the production of the statement was not required because the statement does not relate to the subject matter of the testimony of the witness. The trial court upheld such contention, stating in part:

"The point is, and the government takes the position and the Court agrees, that the only report that has not been exhibited to counsel for the defendant is the report concerning the search of the house, and this witness has not testified with regard to any search of the house he made, except I think in answer to defense counsel's question he stated that there might have been a statement concerning his search of the house. But he has not testified as to finding anything in connection with his search of the house."

We find no evidence in the record that any finger prints or other identifying material was found in the Welle home. The agent did not testify about his search of the Welle home and there is no testimony in the record which is inconsistent with the statements contained in court Exhibit 1.

In Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 309, 7 L.Ed.2d 256, the Court holds:

"It is equally clear that, notwithstanding the fact that the Sullivan and Ondrejka receipts were 'statements' within the meaning of § 3500 and were demanded under that section, petitioner would not be entitled to a new trial because of the nonproduction of those receipts if in truth they do not relate to the direct testimony of those witnesses inasmuch as § 3500(c) requires 'the court [to] excise the portions of [the] statement which do not relate to the subject matter of the testimony of the witness.'"

See United States v. Dickerson, 2 Cir., 347 F.2d 783, 784; United States v. Wenzel, 4 Cir., 311 F.2d 164, 171.

Moreover, the harmless error rule applies to Jencks Act statements under appropriate circumstances. Killian v. United States, supra; United States v. Dickerson, supra.

■ While like the trial court we are unable to understand why the government

refused to produce and give to the defendant court Exhibit 1, as such statement contains nothing contrary to the government's case, we are satisfied that no prejudicial error was committed in refusing to order the delivery to the defendant of the statement contained in court Exhibit 1.

In conclusion, we hold that defendant has failed to demonstrate that any prejudicial error was committed at his trial. The case was fairly tried and submitted to the jury. No error is claimed with respect to the instructions. The defendant has had in all respects a fair trial.

The judgment is affirmed.