**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joe Grady MURRAH,**
**Defendant–Appellant.**

**No. 89–2179.**

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1989.

Matthew Horan, Fort Smith, Ark., Stephen E. Van Gaasbeck, Lytle & Van Gaasbeck, San Antonia, Tex. for defendant-appellant.

Joseph Douglas Wilson, U.S. Dept. of Justice, Washington, D.C., Jeffrey J. Strand, Bob Wortham, U.S. Attys., Tyler, Tex., Mervyn Hamburg, U.S. Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, POLITZ, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Concluding that certain remarks by the prosecutor were improper and prejudicial, compromising the defendant's right to a fair trial, we reverse the convictions of Joe Grady Murrah for mail fraud and arson and remand for a new trial.

### Background

Murrah and his wife owned and operated the Pin–N–Wheels Bowling Alley in Mt. Pleasant, Texas. During the early morning hours of March 26, 1985 a fire razed that structure. Fire authorities suspected that the conflagration was the result of arson. Three and one-half years later Murrah was indicted on five counts of mail fraud, 18 U.S.C. § 1341, and one count of arson, 18 U.S.C. § 844(i).

The prosecution was based on circumstantial evidence, relying on Murrah's business records to establish motive and the testimony of two expert witnesses who opined that the fire was intentionally set. Murrah countered with evidence reflecting that all of their business debts were current and that revenues were improving at the time of the fire.

One mail fraud count was dismissed prior to trial. The jury acquitted Murrah of one mail fraud count and convicted him of the three remaining mail fraud counts and of the arson charge. Murrah moved for a new trial, asserting prosecutorial misconduct in statements made to the jury. When that motion was denied he timely appealed.

### Analysis

This appeal presents serious complaints of prosecutorial misconduct. Murrah focuses on comments by the prosecutor in his opening statement and closing argument. The comments involve two discrete matters: evidence which was discussed but not produced, and charges that the defendant and/or his counsel hid a witness.

In his opening statement the prosecutor informed the jury about a witness who would supply damaging evidence, stating:

> You will hear from a witness for the Government who will tell you that about five months prior to the fire Joe Grady Murrah asked him to burn it, and told him after he refused that if he told Mrs. Murrah, Jean, that he'd kill him, a witness who feared Mr. Murrah and initially denied having made that statement, but will appear before you today to tell you about that conversation.

The prosecutor was referring to a man named Wes Campbell who worked at the bowling alley. During discovery proceedings the government disclosed that Camp-

bell had been "wired" during two telephone conversations with Murrah and the recordings contained exculpatory information directly contrary to Campbell's proposed testimony. The government resisted Murrah's efforts to have the tapes admitted in evidence in his defense. The court ruled the tapes inadmissible because of the hearsay rule, but the tapes could be used for impeachment in the event Campbell testified. Campbell was not called as a witness.

During closing argument Murrah's counsel reminded the jury of the government's promise to produce Campbell's testimony and the fact that no such witness had been called to testify:

> Asking someone else to burn the premises. Where was that witness? When did that occur? Why wasn't it brought to you? It never was. It never happened. It was one of those threads that never showed up today.

In rebuttal the prosecutor responded:

> In any case the prosecutor has to make a decision about how to present his case, and I made the decision after hearing all of these witnesses testify that the evidence of the person who was solicited to burn the building would have been cumulative.

Defense counsel objected to the remarks and asked for a mistrial. The trial judge sustained the objection and instructed the jury to disregard the statement. The prosecutor persisted and retorted: "I think it was a fair response." The defense counsel again moved for a mistrial. The trial judge overruled the motion. The prosecutor continued: "However, I do want you to put that—the defendants knew about the witness."

The second series of objectionable comments occurred during closing argument when the prosecutor accused the defendant and defense counsel of illegal and unethical conduct. The prosecutor accused Murrah and his attorney of hiding Bill Lute, an investigator hired by Murrah to determine the origin of the fire. The prosecutor stated:

> What else do we know? We know that this Defendant knew that it was arson. How? By Bill Lute, his own arson investigator that he tried to hide from us. He hired him, an independent. Mr. Lute goes in and unquestionally [sic] there are pour patterns. Was Mr. Lute called in the civil case? No. Hid out and was tried to be hid out from you here today, for this week.

Defense counsel objected to the prosecutor's remarks. The trial court opted to rectify this improper comment by merely reminding the jury to "recall what the evidence was in the case." The trial record reflects that there was no evidence whatever to support the suggestion that a witness had been hidden.[1] In such a setting the court should have provided more effective instructions to offset the prosecutor's comments, if indeed those comments could have been offset.

The prosecutor's remarks were patently improper. A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial. *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978). A prosecutor may not give a personal opinion about the veracity of a witness. *United States v. Herrera*, 531 F.2d 788 (5th Cir.1976). A prosecutor may not suggest that other supportive evidence exists which the government chose not to develop. *Ginsberg v. United States*, 257 F.2d 950 (5th Cir.1958). In addition to these trial verbotens, the prosecutor may

---

**1.** The government argues that the prosecutor's closing argument was not improper because it correctly characterized defense counsel's cross-examination of Bill Lute. We do not agree. When defense counsel asked Lute: "How did the government find out that you existed?", Lute responded: "I don't know. They called me last week, Mr. Mike Duncan called my office and asked if I had investigated the fire and I said that I had, at which time they issued a subpoena."

This exchange clearly indicates that the witness was available to the government before the criminal trial commenced. Furthermore, the government's allegation of impropriety in the civil trial was a groundless collateral attack against Murrah's character. Under Fed.R.Civ.P. 26(b)(4), a party is permitted to discover facts known or opinions held by an expert witness who was retained for trial preparation only upon a showing of exceptional circumstances.

not charge the defendant with extrinsic offenses other than those specifically allowed by the Federal Rules of Evidence and interpretive jurisprudence. *See e.g.,* Fed.R.Evid. 404; *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc). Further, and most pertinent to this appeal, the prosecutor may not challenge the integrity and ethical standards of defense counsel unless the prosecutor has certain proof of an offense and the matter is relevant to the case being tried.

The Supreme Court and the several federal appellate courts have long recognized that the prosecutor has a distinctive role in criminal prosecutions. As representative of the government the prosecutor is compelled to seek justice, not convictions. Justice is served only when convictions are sought and secured in a manner consistent with the rules that have been crafted with great care over the centuries. Those rules have not resulted from happenstance or indifference but are the product of measured, reasoned thought, marching under the guidon that criminal convictions should be based upon guilt clearly proven in a calm, reflective atmosphere, free of undue passion and prejudice.

■ The prosecutor's remarks were inflammatory and misleading. He first promised the jury that he would produce a witness who would testify that Murrah had asked him to torch the bowling alley, and then threatened to kill him after he refused to do so. No such witness was called and when challenged the prosecutor compounded the harm by telling the jury that "the evidence of the person who was solicited to burn the building would have been cumulative." In essence the prosecutor assured the jury that the government indeed possessed that damning evidence but chose not to use it for purposes solely dictated by trial tactics.

The prosecutor then continued with an attack on the defendant and his counsel, charging them with conduct which bordered onto obstruction of justice and constituted unethical conduct for a trial attorney. An ethical trial attorney does not hide witnesses possessed of relevant and material evidence. The prosecutor's suggestion that Murrah and his counsel did so must be taken as damaging to counsel's credibility before the jury, prompting the jury to summarily reject defense counsel's arguments on the facts and the law. That is a low blow in any trial, but it is particularly egregious in a criminal case bottomed on circumstantial evidence.

Rules of fair play apply to all counsel and are to be observed by the prosecution and defense alike. No counsel is to throw verbal rocks at opposing counsel. The court will not accept such conduct from any lawyer. If anything, the obligation of fair play by the lawyer representing the government is accentuated. "Prosecutors do not have a hunting license exempt from the ethical constraints on advocacy." *United States v. Bursten,* 453 F.2d 605, 610–611 (5th Cir.1971), *quoting Patriarca v. United States,* 402 F.2d 314 (1st Cir. 1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). In recognition of the respected position held by prosecutors, the Supreme Court has warned that a prosecutor's improper suggestions "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1, 14 (1985).

We recognize the onerous burden borne by the prosecution in any criminal case, and we seek not to dampen prosecutorial enthusiasm. But as the Supreme Court observed a half century ago, the government's representative "may prosecute with earnestness and vigor—indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The prosecutorial comments contained in this record have no place in the proper administration of justice.

It does not suffice that the prosecutor made improper comments; before a reversal is in order, the remarks must affect substantially the defendant's right to a fair trial. *United States v. Rhoden,* 453 F.2d

598 (5th Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972). Pertinent factors in this analysis include: the magnitude of the prejudicial effect, the efficacy of any cautionary instructions, and the strength of the evidence of defendant's guilt. *United States v. McPhee,* 731 F.2d 1150 (5th Cir.1984).

Measuring the prosecutor's statements against this backdrop we conclude that the closing argument contained foul blows. The harmful effect of the remarks was pervasive and tended to divert the jury's attention from the charged offenses. The jurors were told of the existence of evidence implicating Murrah in the solicitation of arson garnished with threats of murder. The jurors also were told that Murrah and his lawyer had tried to hide a witness in an earlier civil matter, as well as in the case before them. The damaging effect of these remarks was not neutralized by the trial court's instructions; a just balance was not struck. Inasmuch as the government's case was based largely on circumstantial evidence, subject to varying reasonable inferences, the jury faced more than its traditional credibility assessments. These comments by the prosecutor exceeded the bounds of aggressive advocacy and tainted the trial.

We again echo the exhortation by the Supreme Court in *Berger,* 295 U.S. at 88, 55 S.Ct. at 633, cautioning the prosecutors of this circuit that our admonition should not be lightly regarded:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer ... It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

REVERSED and REMANDED.