# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1007

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Xavier E. Holmes | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 2004
Filed: July 7, 2005

_____

Before MORRIS SHEPPARD ARNOLD, McMILLIAN, and MELLOY, Circuit
Judges.

_____

MELLOY, Circuit Judge.

Xavier Holmes appeals his conviction by a jury of being a felon in possession
of a firearm that had traveled in interstate commerce, in violation of 18 U.S.C.
§ 922(g)(1). We reverse and remand for a new trial.


I.

Two police officers, Officer Snyder and Officer LeMoine, were dispatched to
an apartment where Mr. Holmes and a gun were found after Brenda Williams (a sister
of Mr. Holmes's girlfriend, Sheila Perry) called 911 and reported that there was a
disturbance at the apartment involving a person armed with a gun. The door to the

apartment was wide open when the officers arrived, and Brenda invited them inside. In addition to Brenda, Mr. Holmes and Ms. Perry were present in the apartment. The record is unclear as to what role, if any, Mr. Holmes played in the events leading to the 911 call.

According to both officers' testimony, Mr. Holmes backed away from them with his hands behind his back when they entered the apartment, and Officer Snyder asked him to show his hands, but Mr. Holmes did not initially do so. Officer Snyder testified that he followed Mr. Holmes around a counter, after which Mr. Holmes backed up to a wall and began to pull a hand from behind his back "as if he was picking something up from the back of his pants." Officer Snyder stated that he unholstered his gun in response to Mr. Holmes's actions, then began to point his gun at Mr. Holmes after observing that Mr. Holmes was holding a revolver. According to Officer Snyder, Mr. Holmes did not point the revolver at anyone, but rather "slid it down his leg," let go of it, and it hit the floor. Officer Snyder was then assisted by Officer LeMoine in handcuffing Mr. Holmes. Officer LeMoine testified that she never saw Mr. Holmes holding or dropping a gun, and that she was focused on trying to defuse the argument between the two women in the apartment, but that at some point after Officer Snyder asked Mr. Holmes to show his hands, she "heard a loud clunk like something had fallen onto the floor." The officers recovered the revolver from the floor after they detained Mr. Holmes.

Mr. Holmes's testimony provided an alternative explanation for how the gun got on the floor. He testified that Carolyn Williams (a sister of Brenda and Ms. Perry), who had resided at the apartment where Mr. Holmes and the gun were discovered, had been incarcerated and asked him in a phone call to "secure her furniture so nothing would happen to it." He explained that he had gone with Ms. Perry to Carolyn's apartment to retrieve the belongings, that Brenda was at the apartment when they arrived, and that Ms. Perry and Brenda got into an argument. He stated that after carrying a television set from the apartment to the car, he noticed

police officers approaching the apartment complex, and he went back into the apartment to "get out of their way," as he had "been drinking that day" and "didn't want them to smell it on [his] breath" because he was on probation. Mr. Holmes testified that after he walked back into the apartment and was waiting for Ms. Perry to tell him what she wanted to move next, "the next thing I know the police were there and I saw a gun laying on the counter," and "I panicked and pushed it over the counter" because "I'm on probation" and "I'm not supposed to be around guns." He testified that he had "no idea" who owned the gun, and that the moment at which the police officers arrived was the "first time I ever saw" the gun. Both officers testified that they did not see the gun on the counter or see Mr. Holmes's hand making a motion towards the counter.

## II.

At trial, Mr. Holmes attempted to offer the testimony of Carolyn and two other witnesses whom he had subpoenaed, but the district court refused to allow them to testify, concluding that their testimony would be irrelevant. Prior to the close of his defense, Mr. Holmes asked the court to reconsider admitting the testimony of the three witnesses, but the court again declined to permit the testimony. Mr. Holmes contends that the exclusion of this testimony was erroneous and violated his due process right to present a defense. At trial, Mr. Holmes made offers of proof as to what the witnesses would have said: Carolyn would have testified that she was the leaseholder of the apartment, that her lease had expired, and that she had contacted Mr. Holmes about retrieving her property from the apartment; the apartment's landlord would have testified that Carolyn and her son had lived there and that their lease had ended shortly before the day of Mr. Holmes's arrest; and Carolyn's son would have testified that he was in the process of moving out of the apartment on the day that Mr. Holmes was arrested. Mr. Holmes maintained that he was offering the testimony to show "why he was there, what he was doing, how he came to be there." The district court, however, responded that "[u]nless one of them is going to say they put the gun on the counter, it's not relevant to this proceeding."

-3-

The district court's only stated rationale for excluding the testimony was that it was not relevant. We agree with Mr. Holmes that this was an improper basis for excluding the testimony. The excluded testimony was relevant because it provided background and contextual information that would have been useful in assessing the relative credibility of the officers' and Mr. Holmes's testimony. *Cf. Old Chief v. United States*, 519 U.S. 172, 186-89 (1997); *United States v. DeAngelo*, 13 F.3d 1228, 1232 (8th Cir. 1994), *cert. denied*, 512 U.S. 1224 (1994). Evidence is relevant so long as it has "any tendency," however slight, "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see United States v. Casares-Cardenas*, 14 F.3d 1283, 1287 (8th Cir. 1994), *cert. denied*, 513 U.S. 849 (1994). The threshold for relevance is "quite minimal." *United States v. Guerrero-Cortez*, 110 F.3d 647, 652 (8th Cir. 1997), *cert. denied*, 522 U.S. 1017 (1997). All relevant evidence is admissible, except as otherwise provided by the Constitution, legislation, or applicable evidentiary rules, and conversely, all irrelevant evidence is inadmissible. *See* Fed. R. Evid. 402.

The only disputed issue of material fact at trial was whether Mr. Holmes had knowingly possessed the firearm that the police officers recovered from the apartment. (The parties stipulated that Mr. Holmes was a convicted felon as of the date in question and that the gun had been transported in interstate commerce.) The jury was presented with two inconsistent accounts of how the events surrounding Mr. Holmes's arrest and the recovery of the gun unfolded. The government's theory that Mr. Holmes retrieved the gun from the back of his pants was supported by Officer Snyder's testimony that he had observed Mr. Holmes holding and dropping the gun that was found on the floor, and both officers' testimony that they had not observed a gun on the counter or Mr. Holmes's hand moving toward the counter. The jury had to determine whether this was sufficient to prove beyond a reasonable doubt that Mr. Holmes had possessed the firearm despite Mr. Holmes's testimony to the contrary that he had merely pushed it from the counter upon observing it.

The evidence proffered by Mr. Holmes was relevant because it would have made his explanation of how the gun came to be on the ground—that another person had placed it on the kitchen counter, and that he had pushed it away from him as the police entered the apartment—somewhat more plausible than it was without the evidence. Consequently, the evidence would have been of some value to Mr. Holmes in his efforts to create a reasonable doubt in the jurors' minds that he had possessed the gun. It would have corroborated his contention that he was present in the apartment to help the people who had lived there move, and it might have increased the probability that the apartment was in a state of disarray, that a firearm normally stored elsewhere had been left by somebody on the counter during the moving process, and that, as a guest in the apartment, he was surprised to discover the gun on the counter when the police arrived. It might also have tended to decrease the probability that he was personally armed by demonstrating that he was at the apartment for a legitimate nonviolent purpose rather than to pursue some nefarious goal.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence. *See Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (internal quotations omitted); *see also United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir. 2004). The testimony of these witnesses is relevant and therefore a part of Mr. Holmes's complete defense. Because we determine below that a retrial is necessary, we need not consider whether the exclusion of testimony was harmless. On retrial, these contested witnesses may offer their testimony.

### III.

Mr. Holmes urges us to hold that improper comments made by the government during closing arguments deprived him of his fifth amendment right to a fair trial. The district court has broad discretion in controlling closing arguments, and we

overturn a conviction on the basis of prosecutorial misconduct only upon a showing that improper remarks, in light of any rulings or curative instructions by the district court and in light of the trial as a whole, could reasonably have affected the jury's verdict. *See United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003). If the government has made improper remarks to a jury, we determine whether they deprived the defendant of a fair trial by examining the "cumulative effect of such misconduct," the "strength of the properly admitted evidence of the defendant's guilt," and the "curative actions taken by the trial court." *United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir. 1985). Under this standard, we find that the cumulative effect of the remarks in this case, coupled with the exclusion of admissible testimony and the relative weakness of the government's case, could reasonably have affected the jury's verdict.

Mr. Holmes objected to a statement the government made at the beginning of its rebuttal argument: "Mr. Moss is a good defense attorney, tries to get you to focus your attention over here when what really is important is right in front of you. It's all smoke and mirrors." (Mr. Moss was Mr. Holmes's trial counsel.) The district court overruled Mr. Holmes's objection that this comment was "improper." The government continued to make similar comments about Mr. Moss later in its rebuttal argument, stating that "Mr. Moss wants to distract you and tell you about all this other evidence that's not important," and that issues that Mr. Moss had raised about who had owned the gun in question were a "red herring." The government also commented that "Mr. Moss needs to make sure that they get their stories straight" ("they" presumably referred to Mr. Moss and Mr. Holmes), and that the jury should "look at Mr. Moss's story. That's why I said he's got to get his stories straight."

We think that these various comments referring personally to Mr. Moss and the necessity for Mr. Moss to "get his stories straight," taken as a whole and in the context of the rebuttal argument, show that the government attorney was accusing defense counsel of conspiring with the defendant to fabricate testimony. These types

of statements are highly improper because they improperly encourage the jury to focus on the conduct and role of Mr. Holmes's attorney rather than on the evidence of Mr. Holmes's guilt. Such personal, unsubstantiated attacks on the character and ethics of opposing counsel have no place in the trial of any criminal or civil case.

More than thirty-five years ago our court found such statements to be improper. *See Cline v. United States*, 395 F.2d 138, 141 (8th Cir. 1968) (finding it improper for a prosecutor to accuse defense counsel of dishonesty). Such statements are improper because a prosecutor's comment "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985). They are also improper because the role of the prosecutor is not merely to pursue convictions, but to pursue justice—"the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935). In pursuit of these dual goals, a government attorney may "prosecute with earnestness and vigor . . . may strike hard blows . . . [but] is not at liberty to strike foul ones." *Id.* Accordingly, prosecutors may not inject their own testimony nor cast aspersions upon the defendant through offhand comments, suggestions of conspiracy with defense counsel, nor personal attacks upon the integrity of defense counsel. *See McDonnell v. United States*, 457 F.2d 1049, 1052-53 (8th Cir. 1972) (finding that a prosecutor deserved censure for admittedly describing defense counsel's offer of proof as a "common trick," but finding no abuse of discretion in the denial of a motion for mistrial because the judge and reporter had not heard the remark and the court of appeals was unwilling to assume the jury had heard the remark); *see also United States v. Pungitore*, 910 F.2d 1084, 1142 (3d Cir. 1990) (collecting cases); *United States v. Murrah*, 888 F.2d 24, 27 (5th Cir. 1989) (reversing conviction because prosecutor improperly accused defense counsel of hiding expert witness to prevent government's use of witness); *United States v. McLain*, 823 F.2d 1457, 1462-63 (11th Cir. 1987) (reversing conviction under plain error standard in part because prosecutor repeatedly stated that defense counsel "intentionally misle[d] the jurors and witnesses

and . . . [lied] in court"), overruled on other grounds by *United States v. Lane*, 474 U.S. 438, 449 (1986) (as recognized in *United States v. Watson*, 866 F.2d 381, 385 n.3 (1989)).

It is particularly disturbing that the comments were made during the rebuttal phase of closing argument. *See United States v. Cannon*, 88 F.3d 1495, 1503 (8th Cir. 1996) (reversing a conviction based on a prosecutor's improper remarks during closing and noting, "Because the remark came during rebuttal arguments, defense counsel was unable to respond except by objection."); *United States v. Johnson*, 968 F.2d 768, 772 (8th Cir. 1992) (reversing a conviction based on prosecutor's improper comments during the rebuttal phase of closing arguments); *see also United States v. Carter*, 236 F.3d 777, 788 (6th Cir. 2001) (improper comments during rebuttal constituted "the last words from an attorney that were heard by the jury before deliberations"). In *Cline*, our court found an improper comment non-prejudicial specifically because the comment was an "isolated remark . . . *made early in the trial*." *Cline*, 395 F.2d at 142 (emphasis added). Here, in contrast, the prosecutor's improper comment came in the rebuttal phase of closing arguments. Defense counsel was left with no opportunity to rebut the allegations and the jury heard the remark immediately before deliberations. The potential for prejudice is great during closing arguments, especially when the defense has no opportunity for rebuttal.

The strength of the government's case, like the timing of improper comments, is also a factor relevant to our determination of prejudice. *Cannon*, 88 F.3d at 1503 ("[A]n improper argument is less likely to have affected the verdict in a case when the evidence is overwhelming than in a case where the evidence is weak."); *Johnson*, 968 F.2d at 772 ("[T]he evidence of Johnson's guilt is far from overwhelming."). Here, the government's case was less than overwhelming. This is a case where one police officer, Officer Snyder, presented a version of the facts that conflicted with the defendant's version of the facts. A second police officer, Officer Le Moine, offered testimony that could have supported either explanation. (She verified that she heard

a clunk and saw the gun on the floor, but her failure to see Mr. Holmes move his hand towards the counter is easily explained by the fact that she was diffusing the argument between the two women and not looking at Mr. Holmes.)  Further, when assessing the relative strength of the government's case and the potential for prejudice, we must consider the cumulative effect of the fact that relevant evidence favorable to the defendant was improperly excluded.

As noted above, improper comments merit reversal if we find that those comments, in the context of the trial as a whole, could reasonably have affected the jury's verdict.  Here the standard has been met.  Because the government's case was not strong, witnesses offered by the defense were improperly excluded, the comments occurred during rebuttal arguments, and the comments were of a highly prejudicial nature, we conclude that the defendant should be granted a new trial.[1]

[1]The government made two other potentially prejudicial comments.  Taken in isolation, we believe that the district court adequately mitigated the impact of these other comments through its curative actions.  Nevertheless, we strongly recommend that prosecutors not make such comments, and the *cumulative* effect of these comments added to the potential for prejudice in this case.

Mr. Holmes objected during rebuttal argument when the government told the jury that "to buy the defendant's story you have to believe that Officer Snyder and Officer LeMoine were lying."  Mr. Holmes objected that this argument constituted impermissible "burden shifting," and his objection was overruled.  Though the testimony of the officers and Mr. Holmes were contradictory in important respects, and Mr. Holmes attacked the credibility of the officers as part of his defense, Mr. Holmes proposed the theory in his closing argument that the officers were merely "mistaken" in their perceptions based on the "stress" and "intensity" of the situation.  The government's contention that Mr. Holmes's testimony about the gun could be believed only if both police officers were "lying" was, therefore, an incorrect characterization of the dispositive factual issue and of Mr. Holmes's theory of defense.  Although the district court overruled Mr. Holmes's objection to the government's statement in this instance, the district court partially mitigated the impact of the statement by properly instructing the jury regarding the burden of proof.

IV.

Mr. Holmes next contends that the district court erred by failing to give an instruction to the jury limiting the evidentiary use of his prior felony convictions. Rule 105 of the Federal Rules of Evidence provides that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." In accordance with Rule 105, Mr. Holmes requested that the district court give an instruction that stated:

> You have heard evidence that the defendant Xavier Holmes was previously convicted of a crime. You may use that evidence only to help you decide whether to believe his testimony and how much weight to give it. That evidence does not mean that he committed the crime charged here, and you must not use that evidence as proof of the crime charged in this case.

---

The government also argued to the jury that "at the beginning of the trial [Mr. Holmes] is entitled to a presumption of innocence until evidence is presented. When he takes that stand, he's not presumed to be telling the truth." The district court sustained Mr. Holmes's objection that this line of argument was a misstatement of the law, stating during a bench conference that the government was "crossing over the bounds," and that Mr. Holmes "has the presumption of innocence until the jury finds he is guilty beyond a reasonable doubt." At the end of the government's rebuttal argument, the district court properly instructed the jury that "the defendant's presumption of innocence follows him throughout the trial" and "doesn't automatically go away when he gets on the witness stand and testifies."

While the government's statement that a defendant who testifies is not presumed to be telling the truth was correct, the suggestion that the presumption of innocence in a criminal trial ceases to apply when the government presents evidence was misleading, and the district court thus appropriately sustained the objection and gave the curative instruction. The district court's actions undoubtedly helped to dispel any confusion or undo any prejudice that might have arisen as a result of the comment about the burden of proof.

This proposed instruction was taken verbatim from the Eighth Circuit's model jury instruction relating to impeachment of a defendant's testimony by a prior conviction. *See* Eighth Circuit Manual of Model Jury Instructions—Criminal, Instruction 2.16. The government opposed the use of Mr. Holmes's proposed instruction because it did not anticipate "arguing any sort of propensity in this case," and because the instruction would confuse the jury since one of the elements of the crime charged was the fact that Mr. Holmes was a convicted felon. This was the only instruction on this matter that Mr. Holmes asked for, and the district court refused to give it.

The district court did not err in declining to instruct the jury as Mr. Holmes requested because the proposed instruction was an erroneous statement of the law. One of the essential elements of the crime of being a felon in possession of a firearm is that the defendant has "been convicted [of] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The evidence of Mr. Holmes's prior felony convictions was thus not only admissible to shed light on his credibility as a witness, it was substantive evidence that he had committed the charged offense. A direction that the jury "must not" use evidence of Mr. Holmes's previous felony convictions "as proof of the crime charged in this case" would simply have been wrong.

V.

Mr. Holmes also raises a sentencing issue under *Blakely v. Washington*, 124 S.Ct. 2531 (2004). In light of our remand order, we need not address this issue.

VI.

We reverse and remand for a new trial.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I would not reverse this conviction based on the remarks that the government's counsel made during closing arguments. The court indulges every presumption against a benign construction of those remarks and its characterization of their purport is harsh. In my judgment, the statements objected to did not directly implicate defense counsel's honesty.

I see no reason, moreover, to believe that the statements had a substantially injurious effect on the outcome of the case. Juries know that argument is not evidence; it is just talk. For all that we can know, the argument may well have gotten the jury's back up and prejudiced the government rather than the defendant. The court presumes that juries are a lot more impressionable than experience will allow for, and gives them too little credit for a common sense ability to discount vituperation and hyperbole and to restrict themselves to a consideration of the evidence adduced at trial.

There is nothing in this case to differentiate it from the scores, perhaps hundreds of cases that have routinely come before us in the last thirty or forty years in which an identical argument has been rejected out of hand. This counsels more caution than the court employs in the present circumstances.

I would uphold this judgment and therefore respectfully dissent.

_____