UNITED STATES of America, Appellee,

v.

Gary HAMELL, a/k/a Gary
Hamell-el, Appellant.

UNITED STATES of America, Appellee,

v.

Douglas WILLIAMS, Jr., Appellant.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1990.

Decided April 22, 1991.

Rehearing Denied June 18, 1991.

Ronald Norwood, St. Louis, Mo., for appellant Hamell.

James Knappenberger, Clayton, Mo., for appellant Williams.

Michael Fagan, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and Van Sickle,* Senior District Judge.

VAN SICKLE, Senior District Judge.

Gary Hamell and Douglas Williams, Jr., who have been convicted of narcotics offenses following a joint jury trial, appeal their convictions and claim a number of errors were committed at that trial in admission of evidence, jury instructions and trial procedures. After review of the record, we reject the contentions of error and affirm.

## I. BACKGROUND

A St. Louis County Police Sergeant, Frazier Garner, was patrolling in a marked police car on October 6, 1988. As he approached a restaurant parking lot he observed two cars parked side by side and saw defendant Williams go to the car occupied by defendant Hamell, hand over what the officer thought was a roll of money and receive a clear plastic bag in return. The defendants then noticed the officer and started to leave. Sergeant Garner pulled his car in front of the defendants' cars, forcing them to stop. The officer saw Williams and the female driver of his car, Stephanie Drinker, both bend down in the seat as if hiding something.

Sergeant Garner got out of his car, drew his revolver, and ordered the three of them out of their cars. After they were out he asked them for identification. While Williams was arguing with Garner, Hamell sidled to the rear of one of the cars and Sergeant Garner saw him throw something to the ground. Garner then ordered the three of them to lie down and he recovered two bags which Hamell had thrown behind the car. These bags contained cocaine. He then arrested all three, read them their *Miranda* rights and frisked them. He recovered $1200 in a roll and two more bags of cocaine from Hamell's front pocket. Police later recovered a packet of cocaine that was stuffed down the front of Drinker's slacks.

The total quantity of cocaine seized was 82 grams. All of this cocaine was 95 percent pure and if cut to 30 percent purity, as is generally done, had a street value of over $20,000.

All three were indicted and tried together. Drinker was convicted of one count of possession of cocaine and was sentenced to two months imprisonment and one year of supervised release. Hamell was convicted of one count of conspiracy to distribute cocaine, one count of distributing cocaine and one count of possession of cocaine with intent to distribute. He received a sentence of 242 months imprisonment and three years supervised release on each count, the sentences to be served concurrently. Williams was convicted of conspiracy to distribute and possession with intent to distribute, and acquitted on a charge of distribution, and received a sentence of 27 months imprisonment and three years supervised release on each count, to be served concurrently.

Prior to the trial defendants moved to suppress certain evidence. The magistrate held a hearing on this motion and recommended that it be denied. The district court adopted the magistrate's recommendation and denied the motion. Defendants

* The Honorable BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

Hamell and Williams appeal from the conviction, alleging various errors.

Hamell contends that:

1. The district court erred in that it did not give the report of the magistrate a complete de novo review.

2. The evidence seized at the scene should have been suppressed at the trial in that its seizure was unconstitutional because Officer Garner did not have sufficient cause to make either an investigatory stop or an arrest.

3. The government's actions in destroying potentially exculpatory evidence mandates dismissal of the charges.

4. The trial court should have allowed into evidence certain memos evidencing bias on the part of the police.

5. The trial court should have received in evidence a letter allegedly written by Drinker to her boyfriend in which she recants her grand jury testimony and denies that there was a drug deal.

6. The trial court should have given defendant's requested instruction relative to the proof needed to convict of conspiracy.

Williams contends that:

1. He joins with Hamell in the claim that the Drinker letter should have been received in evidence.

2. He had offered two suggested jury instructions which should have been given.

## II. DISCUSSION

### 1. Review of Magistrate's Report.

■ The statute providing for referral to a magistrate, 28 U.S.C. § 636, requires that before adopting a magistrate's report where there has been objection, the district court must review the matter de novo. This court has recently overturned several district court's adoptions of magistrate's reports for failure by that court to do a de novo review. *Nabors v. United States,* 929 F.2d 354 (8th Cir.1990); *Taylor v. Farrier,* 910 F.2d 518 (8th Cir.1990); *Branch v. Martin,* 886 F.2d 1043 (8th Cir.1989). While some language used in those decisions may suggest that a district judge must affirmatively state that he has read the transcript, a critical reading of those cases shows that there was not a transcript in existence at the time of the adoption by the district court and that the district court in those cases could not have conducted a complete de novo review. Here the transcript of the hearing was available after early June, 1989, and the district court's order adopting those recommendations was filed on November 3, 1989.

To hold that this case must be remanded solely because the district court did not specifically state that it had done a complete de novo review would, in effect, create a presumption that the district judge acted improperly. Such a presumption would clearly be improper and we decline to reach a decision that will result in its creation. Rather, we hold that the rule is that where an objecting party is able to make a prima facie case that there was not a de novo review, the onus shifts to the other party to show that there was a complete review. However, where there is no indication that the review failed to comply with the statute, this court will not presume error. Rather, in the absence of any evidence to the contrary, we presume that the review was done properly and affirm the district court's approval of the magistrate's recommendation.

### 2. Arrest, or Stop, and Seizure.

■ Hamell argues that when Officer Garner ordered the defendants out of their car he effected their arrest; that this arrest was illegal because it was done without probable cause; and that the resulting seizure of the money and cocaine violated their constitutional rights since it was incidental to an illegal arrest. For these reasons, he contends, this evidence should have been suppressed.

Officer Garner was an experienced and trained police officer with over 20 years of experience at the time of the incident. He observed a transaction that he thought was a drug sale. When he began to investigate further he observed more suspicious activity, i.e.: an attempt to hide something by Williams and Drinker and an obvious desire

by all three to flee. He stated that he thought he was seeing a drug deal. Given his training and experience, Sergeant Garner's belief that he had seen a crime committed was reasonable and his subsequent actions were justified and constitutional. The denial of the motion to suppress was correct.

### 3. Destruction of Evidence.

■ Department of Justice procedures require that cash seized be exchanged for a cashier's check within 60 days of seizure. The money was seized on October 6, 1988 and deposited for a cashier's check on November 18, 1988. When Hamell's counsel, on August 4, 1989, 8 months later, asked the government for the cash so he could have it examined, he was told it was no longer available. He now claims that the roll of money was potentially exculpatory evidence because the absence of Williams fingerprints on it would have been evidence that the money had not changed hands and that there was, therefore, no drug deal.

Also, some notes made by an officer, not Garner, who participated in the post arrest handling of these defendants and used by him to prepare a report on the incident, were destroyed. Hamell argues that the destruction of these notes also mandates dismissal of the charges against him.

As to both the money and the notes, the government contended and both the magistrate and the district court found, that *Youngblood v. Arizona*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) requires plaintiff to show that the destruction was made in bad faith if he is going to prevail on this argument. We agree. Plaintiff has failed to make such a showing. In fact, no evidence was offered to show bad faith and the district court's refusal to suppress this evidence was correct.

### 4. Police Bias.

■ Hamell claims error in the refusal of the trial court to allow into evidence two memos regarding the Moorish Science Temple of America, of which Hamell was a member. He contends that this would show that the St. Louis police were biased against Hamell as a member of this church and that they, therefore, "set him up". Our review of this issue is limited to a determination if the district court abused its discretion. (*United States v. Rasmussen*, 790 F.2d 55 (8th Cir.1986)).

All of the officers involved in this incident were examined regarding the memos. None had any familiarity with them and all denied ever seeing the memos. Even though there may have been some persons in the St. Louis County Police Force who had a bias against the members of this group because of these memos, it could hardly be the officers involved with these defendants, who had never seen them. Therefore, the trial court properly denied the offer of this evidence.

### 5. The Drinker Letter.

■ Both Hamell and Williams contend that the refusal to admit the letter purported to have been written by Drinker to her boyfriend was reversible error. They contend that the letter exonerates them in that it refutes her story told to the grand jury, and denies that there was a drug deal. The letter claims that she had the drugs on her person before meeting Hamell. The court took the testimony of the boyfriend out of the hearing of the jury, and held that the authentication of the letter was inadequate, that it was hearsay, and did not fit into any exception to the hearsay rule. The court also found that its prejudicial value outweighed its probative value.

We may reverse that ruling only if it was an abuse of discretion. *United States v. Rasmussen*, supra. Given the relationship of the parties, (the boyfriend was Williams' best friend), and the fact that the trial judge had the opportunity to hear the testimony and observe the witness's demeanor and actions, we find that there was no abuse in discretion in the trial court's finding of insufficient authentication.

### 6. Jury Instructions.

■ Finally, both Hamell and Williams requested jury instructions that were refused, and allege error based on this refusal. The government argues that defendants have failed to preserve this issue. We do not discuss that here because we determine that the instructions requested were properly refused. The first of these instructions reads:

> Mere proof of a buyer-seller relationship is not enough to convict a defendant as a co-conspirator in drug conspiracy charges. Thus, a purchaser of drugs from an individual does not become a part of a conspiracy merely because of the purchase of drugs.

Defendants cite United States v. Douglas, 818 F.2d 1317 (7th Cir.1987) as authority for this proposition. This circuit has not yet adopted the rule in Douglas, and it is not necessary to do so here because we hold that it was not error to refuse to give this instruction for two reasons. First, the court gave at least seven separate instructions relating to the elements of conspiracy. Reading those instructions together with the standard instructions regarding burden of proof and how to analyze the evidence, this court finds that the instructions as given adequately stated the law.

Second, we find that the defendants in this case would not be entitled to this instruction under Douglas, even if we adopt the Douglas rationale. The Douglas court held that a defendant is entitled to a buyer-seller instruction only if the evidence tends to show that the drugs purchased were meant for personal use and not for resale. In Douglas, after holding as quoted in the requested instruction, the court went on to say:

> Each drug conspiracy case must be analyzed according to its specific facts to determine whether a buyer-seller instruction is appropriate. A defendant is entitled to a buyer-seller instruction only if the instruction has some foundation in the evidence. In deciding whether an instruction is supported by the evidence in a particular case, a court may choose to consider such factors as the quantity of drugs involved, their resale value, whether the defendant is an addict, and whether the purchases, during the relevant time period at issue, were of the quantity and quality that a jury could reasonably believe are generally used for personal consumption.

Douglas, 818 F.2d at 1321.

Here, the quantity and quality of the drug clearly exceeded the amount and purity generally purchased for personal use, indicating that it had been purchased for resale. Indeed, the jury found both of these defendants guilty of possession with intent to distribute. Hence, a buyer-seller instruction was not proper here and it was not error to refuse this instruction.

Williams also objects to the refusal by the trial court to give his requested instruction regarding the charge of distribution. Williams was acquitted on this charge and lacks standing to object to the refusal to give that charge.

Accordingly, we affirm the judgment of the district court.

■

Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend, Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell, by his next friend, Maurice Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall;