# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 95-3615
No. 95-3621
No. 95-3624

_____

United States of America,                *
                                          *
        Plaintiff-Appellee,               *
                                          *
    v.                                    *
                                          *
Giovanny Armando Guerrero                 *
-Cortez, a/k/a Gil,                       *
                                          *
                                          *
        Defendant-Appellant.              *
                                          *
                                          *
United States of America,                 * Appeals from the United States
                                          * District Court for the
        Plaintiff-Appellee,               * Western District of Missouri.
                                          *
    v.                                    *
                                          *
Roberto Soler, a/k/a Robert,              *
a/k/a Bob, *
                                          *
        Defendant-Appellant.              *
                                          *
                                          *
United States of America,                 *
                                          *
        Plaintiff-Appellee,               *
                                          *
                                          *
    v.                                    *
                                          *
William Gonzalez-Gonzalez,                *
                                          *
        Defendant-Appellant.              *

———————————

Submitted:  September 12, 1996

Filed:  April 14, 1997
———————————

Before LOKEN, HEANEY, and JOHN R. GIBSON, Circuit Judges.

———————————

JOHN R. GIBSON, Circuit Judge.


A jury convicted Giovanny Armando Guerrero-Cortez, Roberto Soler, and William Gonzalez-Gonzalez of conspiracy to possess with intent to distribute cocaine, and also convicted Soler and Gonzalez-Gonzalez of two counts of aiding and abetting the distribution of cocaine, all in violation of 21 U.S.C. §§  841(a)(1), 846 (1994).  Guerrero-Cortez appeals arguing that the district court erred in denying his motion for acquittal as to the conspiracy count, and erred in admitting into evidence a letter he sent from jail.  Soler and Gonzalez-Gonzalez appeal arguing that the district court erred in computing their sentences.  We affirm all of the convictions, and the sentences imposed on Guerrero-Cortez and Gonzalez-Gonzalez, but reverse Soler's sentence and remand to the district court for reconsideration of Soler's argument that he is entitled to a reduction for acceptance of responsibility.


In late spring or early summer of 1994, Saul Acosta approached Michael Hood in Miami, Florida and asked him if he knew of any out-of-state individuals who desired to purchase cocaine.  Acosta told Hood that Soler and Guerrero-Cortez would probably supply the cocaine for the transactions.  Sometime thereafter, Acosta introduced Hood to Soler and Guerrero-Cortez.  Unknown to Acosta, Hood previously had served as an informant for the Federal Bureau

of Investigation.

Hood told Special Agent Joseph Twardowski that he knew individuals in Miami that desired to distribute cocaine in the Midwest. Based upon this information, Special Agents Twardowski and Larry Tongate devised a plan in which Hood would introduce Tongate, who would portray himself as a midwestern cocaine distributor, to the Miami individuals in order to purchase cocaine from them.

Hood then informed Acosta that he had a cocaine buyer in Kansas City named Larry. Larry was Special Agent Tongate. Because Hood had located a buyer, Acosta asked Guerrero-Cortez to supply cocaine for the sale. Guerrero-Cortez replied that he was waiting for a source to supply him with cocaine, and that there was a strong possibility that he could supply the necessary amounts of cocaine. Acosta contacted Hood and verified that he had a supplier for the sale and that he and his associates wanted to establish a long-term relationship with the Kansas City buyer that would involve regular monthly sales of multi-kilogram amounts of cocaine.

Hood and Acosta flew to Kansas City on September 8, 1994. Before departing, Acosta spoke to Soler and Guerrero-Cortez to ensure they could supply cocaine for the Kansas City buyer. They agreed to do so. Discussions between Acosta, Hood, and Tongate in Kansas City resulted in Tongate agreeing to purchase one kilogram of cocaine from Acosta for $26,000.

After this discussion, Acosta contacted his associates in Miami and told them to send the cocaine, which soon arrived in Kansas City. After receiving it, Tongate showed Acosta the $26,000 he owed for the cocaine. Tongate next went to the post office where he feigned mailing the money to Miami, after which Acosta

told Tongate that he, Soler, Gonzalez-Gonzalez, and Guerrero-Cortez could continue their cocaine trafficking relationship, and agreed to send more cocaine to Tongate.

Acosta then returned to Miami. When the money did not arrive, however, Acosta attempted to return to Kansas City. When he arrived at the Miami airport to fly to Kansas City, Special Agents Tongate and Twardowski confronted Acosta. Acosta then agreed to cooperate in the investigation by arranging the delivery of a second kilogram of cocaine and by recording conversations with Soler, Guerrero-Cortez, and Gonzalez-Gonzalez, the others that were to be involved in the transaction.

Acosta then contacted Soler to ask him to send another kilogram of cocaine. Soler agreed to send the cocaine. Gonzalez-Gonzalez then mailed one kilogram of cocaine to Kansas City.

Acosta next met with Guerrero-Cortez at Acosta's home in Miami. During the visit, Acosta recorded Guerrero-Cortez reciting cocaine prices and making several statements concerning his involvement in cocaine trafficking activities, including that he had attempted to locate supply sources for more cocaine.

Authorities charged Soler, Gonzalez-Gonzalez, and Guerrero-Cortez with one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine, and two counts of aiding and abetting the distribution of cocaine. Acosta originally was charged as a co-defendant, but he plead guilty to the conspiracy count. At trial, the jury convicted Soler and Gonzalez-Gonzalez on all three counts. The district court entered a judgment of acquittal as to the distribution charges against Guerrero-Cortez, but the jury found him guilty on the conspiracy count.

## I.

## A.

Guerrero-Cortez argues that the district court erred in denying his motion for a judgment of acquittal on the conspiracy charge. He argues that the evidence based on the testimony of cooperating witnesses was not sufficient to prove beyond a reasonable doubt that he entered into an agreement to possess cocaine with the intent to distribute. The government asserts that the testimony of Acosta, the corroborating testimony of Hood, and the incriminating statements of Guerrero-Cortez recorded by Acosta provide more than enough evidence to support the conviction.

In reviewing the sufficiency of the evidence to support a guilty verdict, we view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence. See United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996); see also Glasser v. United States, 315 U.S. 60, 80 (1942).

To prove that a conspiracy exists "the government must show an agreement between at least two people and that the agreement's objective was a violation of the law." United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996)(quotation omitted). The government can use direct or circumstantial evidence to prove the existence of an agreement. See id. Further, once the government proves that a drug conspiracy exists, "only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction." Id.

There is enough evidence to support the jury's conclusion that an agreement existed between Guerrero-Cortez, Soler, Gonzalez-Gonzalez, and Acosta to supply cocaine to Tongate. Acosta, who was heavily involved in the drug trafficking and served as a link between Soler, Gonzalez-Gonzalez, Guerrero-Cortez, and Tongate, described the roles of each conspirator, including Guerrero-Cortez, in the trafficking scheme. Acosta also testified that Guerrero-Cortez agreed to supply him with cocaine for Tongate. It is not our duty to judge the credibility of a witness, this task instead rightfully belongs to the jury. See United States v. Jackson, 959 F.2d 81, 82 (8th Cir.), cert. denied, 506 U.S. 852 (1992). "A conviction resting on the testimony of a co-conspirator will not be reversed unless no reasonable juror could believe the incriminating testimony." Id. Because a reasonable juror could believe the testimony of Acosta, sufficient evidence exists to uphold the conviction. In addition, Hood's testimony generally corroborated Acosta's testimony. Finally, Guerrero-Cortez himself made several statements during a recorded conversation with Acosta concerning his involvement in cocaine trafficking activities.

A reasonable juror could believe that an agreement existed between Guerrero-Cortez and at least one of the other drug conspirators. We affirm the district court's denial of Guerrero-Cortez's motion for acquittal on the conspiracy count.

**B.**

Guerrero-Cortez next contends that the district court erred in admitting a letter he sent to a friend, Maria Navarro, while he was imprisoned. The letter requested that Navarro inform Acosta's employer, Pattatuchi, that Acosta was an FBI informant. Guerrero-Cortez argues that the letter was not relevant and inadmissible

because Acosta's employer had no real connection to the drug conspiracy. In addition, Guerrero-Cortez argues that even if the letter was relevant, the admission of the letter was unfairly prejudicial in violation of Federal Rule of Evidence 403.

We review evidentiary rulings for an abuse of discretion. See United States v. Hamell, 931 F.2d 466, 469 (8th Cir.), cert. denied, 502 U.S. 928 (1991). We will not reverse a conviction on the basis of an erroneous evidentiary ruling where the error is harmless. See United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996); United States v. Carper, 942 F.2d 1298, 1301-02 (8th Cir.), cert. denied, 502 U.S. 993 (1991).

In this case the government argued that the letter was admissible because it was a threat that showed consciousness of guilt. Courts may consider evidence of threats or intimidation to government witnesses. See United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir.), cert. denied, 502 U.S. 992 (1991); United States v. Gatto, 995 F.2d 449, 454-55 (3d.Cir.), cert. denied, 510 U.S. 948 (1993); United States v. Gonzalez, 703 F.2d 1222, 1223 (11th Cir. 1983)(per curiam); United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992). An effort to intimidate a witness tends to show consciousness of guilt. See Maddox, 944 F.2d at 1230; Gatto, 995 F.2d at 454-55; Mickens, 926 F.2d at 1328-29.

Guerrero-Cortez argues that the letter is not relevant both because Pattatuchi had no connection to the drug conspiracy, and because no evidence was presented that showed Pattatuchi was criminally prone to carry out threats or violence against Acosta. The threshold of relevance, however, is quite minimal. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination

of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  We cannot say that the district court abused its discretion in admitting the letter into evidence because the trial court could have viewed the letter as evidence of Guerrero-Cortez's guilt, and thus relevant to making his involvement in the conspiracy more probable.

Guerrero-Cortez further argues that the evidence, even if relevant, was inadmissible because it was unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.  Rule 403 allows the district court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.  See United States v. Rabins, 63 F.3d 721, 726 (8th Cir. 1995), cert. denied, 116 S. Ct. 1031 (1996).  We give deference to a district court's decision under the Rule 403 balancing test and reverse only for a clear abuse of discretion.  See id. (citing United States v. Mitchell, 31 F.3d 628, 631 (8th Cir. 1994)).  Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 117 S. Ct. 644, 650 (1997).  Unfair prejudice, however, does not include damage that occurs to a defendant's case because of the "legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis."  United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986) (citing Wade v. Haynes, 663 F.2d 778, 783 (8th Cir. 1981), aff'd 461 U.S. 30 (1983)), cert. denied, 480 U.S. 922 (1987); accord Old Chief, 117 S. Ct. at 650.

We find no abuse of discretion.  Evidence introduced in a trial, insofar as it has probative force, may be prejudicial to at least one party.  The critical issue, however, is the degree of unfairness of the prejudicial evidence and whether it tends to

-8-

support a decision on an improper basis.  We do not view the prejudice here as unfair.  The letter was simply read to the jury.  It was not excessively inflammatory or likely to provoke an emotional jury reaction because the letter does not encourage Pattatuchi to take action at all, instead it serves only to inform Pattatuchi of Acosta's involvement with the FBI.  <u>See</u> <u>Mendez-Ortiz</u>, 810 F.2d at 79.  We cannot say the district court abused its discretion in admitting the letter.

## II.

Gonzalez-Gonzalez asserts that the district court erred by denying him a reduction for both his acceptance of responsibility and for being a minor or minimal participant in the conspiracy, and thus violated Rule 32(c)(1) of the Rules of Criminal Procedure.  The government responds that the statutory mandatory minimum sentence moots the issue because even if the district court had granted both reductions to which Gonzalez-Gonzalez claims he is entitled, it would have had no affect on the length of Gonzalez-Gonzalez's sentence.  Gonzalez-Gonzalez urges that we nonetheless must review the erroneous sentencing computation because of the importance of the district court's findings related to the information in the Presentence Investigation Report to the Bureau of Prisons.

We hold that we do not have the authority to review the district court's denial of either reduction.  Rule 32(c)(1) requires that at the sentencing hearing the court must allow the defendant and the government to comment on the probation officer's determinations and

> must rule on any unresolved objections to the presentence
> report.  . . .  For each matter controverted, the court

must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(c)(1).

Here, the district court complied with Rule 32. During the sentencing hearing, the district court first considered the presentence report and asked counsel for both parties to present their objections to the report. After hearing the opposing arguments on the issue of whether Gonzalez-Gonzalez should get a reduction for acceptance of responsibility and for being a minor or minimal participant, the court summarily denied both requests. The court then ruled that a statutory minimum punishment of ten years applied and overrode the punishment of seventy-eight to ninety-eight months as computed under the Sentencing Guidelines. Thus the allegedly erroneous sentencing computation under the guidelines would have no affect on Gonzalez-Gonzalez's sentence. In this circuit we require only that district courts comply with Rule 32. See Bayless v. United States, 14 F.3d 410, 412 (8th Cir. 1994)(applying Rule 32(c)(3)(D), which is identical to Rule 32(c)(1), except for the fact that Rule 32(c)(3)(D) applies to crimes committed before November 1, 1987, whereas Rule 32(c)(1) applies to crimes committed on or after November 1, 1987). Here, the district court heard objections to the presentence report and made a finding on all controverted matters, thus satisfying Rule 32. There is no need to address an allegedly erroneous computation where a correction will not affect a defendant's sentence. See United States v. Sepulveda, 15 F.3d 1161, 1199-1200 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994); United States v.

Saccoccia, 58 F.3d 754, 790-91 (1st. Cir. 1995), cert. denied, 116 S. Ct. 1322 (1996) (no need to address allegedly erroneous sentencing computation if correcting it will neither change the defendant's sentence nor relieve him from some unfair collateral consequence).

**III.**

Roberto Soler argues that the district court erred in denying his request for a sentencing-level reduction for acceptance of responsibility. We reverse a sentencing court's factual finding with respect to a denial of a motion for acceptance of responsibility only for clear error. See United States v. Skorniak, 59 F.3d 750, 757 (8th Cir.), cert. denied, 116 S. Ct. 487 (1995).

The federal sentencing guidelines allow for a two-level reduction for acceptance of responsibility when a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (1994). Where the offense level is greater than sixteen, a defendant can earn an additional one-level reduction if the defendant has provided timely information to the government concerning his or her own involvement in the offense or by timely informing the government of an intent to plead guilty to allow the government to avoid preparing for trial. See U.S.S.G. § 3E1.1(b).

Soler argues he is entitled to a three-level reduction for acceptance of responsibility because his uncontradicted testimony indicates that shortly after indictment he twice attempted to plead guilty for his involvement with two kilograms of cocaine. The government refused to accept the plea offer, however, because Soler

would not accept responsibility for a conspiracy with intent to distribute five or more kilograms of cocaine.

After the failed attempt to enter a plea bargain, a jury found Soler guilty on all counts. Before the court instructed the jury, Soler's attorney requested that the court instruct the jury to make a factual finding on the amount of cocaine with which the conspiracy was involved, in the event the jury found that a cocaine conspiracy existed. The court, however, denied this request, and instead instructed the jury only to find that a conspiracy existed. As a result, the jury returned a general verdict of guilty, but was not required to make a specific finding on the amount of cocaine with which Soler was involved.

During the sentencing hearing Soler's counsel argued that since the court had refused to instruct the jury to make this finding, the court must now make this finding, and that the six-kilogram amount mentioned in the presentence investigation report was based on nothing more than an allegation based on Soler's indictment. In making the finding on the amount of cocaine, the court found that Gonzalez-Gonzalez was the most culpable of all of the defendants. Observing that the government had conceded that Gonzalez-Gonzalez was only involved with two kilograms, the court made a factual finding that Soler's involvement was limited to two kilograms of cocaine as well, not the five or more kilograms in that the government alleged Soler was involved. The district court then considered Soler's motion for a reduction based on acceptance of responsibility, and denied it because the timing of the acceptance was at the time of sentencing and not at the time of trial.

The district court, however, erred in ignoring evidence that Soler attempted to plead guilty before trial. Soler's

uncontradicted testimony shows that almost immediately after indictment he twice attempted to enter into a plea agreement. Soler's counsel consistently argued that this was a two-kilogram case, and that his client had tried to plead guilty to two kilograms from the beginning of the case. Finally, during sentencing Soler admitted that he had been involved with two kilograms of cocaine and that he was very sorry for his acts.

Further, the presentence investigation report quoted Soler as stating that shortly after indictment he twice attempted to plead guilty to counts II and III, both of which involved aiding and abetting in the distribution of one kilogram of cocaine. The report then described details of the two one-kilogram transactions which Soler himself provided. The report concluded that "[Soler] has demonstrated an acceptance of responsibility for his involvement in Counts 2 and 3, however, [Soler] has not demonstrated an acceptance of responsibility for Count 1 involving 5 kilograms or more of cocaine. Therefore, a downward adjustment for acceptance of responsibility is not applicable."

Soler's counsel prepared written objections to the presentence investigation report and the government prepared responses, both of which were made a part of the report. Soler objected that "taking the evidence in a light most favorable to the defendant would support that the defendant is accountable for only 2 kilograms of cocaine in this conspiracy." The probation officer responded that the quantity of cocaine for which the defendant was accountable was a determination to be made by the court.

Finally, Soler objected to the probation officer's conclusion that a reduction for acceptance of responsibility was not applicable because Soler had offered to plead guilty to two kilograms of cocaine, and had candidly discussed his role in the

offense with the probation office. The probation officer responded that the probation office understood that Soler had accepted responsibility for his behavior involving two kilograms of cocaine. The officer stated, however, that because Soler was convicted of a conspiracy to possess with intent to distribute five kilograms or more and had not accepted responsibility for that conduct, no reduction for acceptance of responsibility applied. The response concluded that a reduction for acceptance of responsibility was not warranted but stated that this was an issue to be decided by the court.

Based on this record, including not only the statements of Soler and his attorney at sentencing, but also the contents of the presentence investigation report, and the objections and responses made to it, two facts spring out. The first is that Soler consistently and repeatedly admitted that he was involved with two kilograms of cocaine. Soler's counsel consistently pointed out that Soler had offered to plead guilty to the two one-kilogram offenses following indictment. The government refused to accept Soler's guilty plea, however, because he would not plead guilty for involvement with five of more kilograms of cocaine. The second fact is that the probation office acknowledged that Soler had accepted responsibility for his involvement with two kilograms of cocaine, but objected to the reduction only because Soler had failed to accept responsibility for five kilograms.

Nothing in the record contradicts that Soler offered to plead guilty to two kilograms of cocaine. Indeed, the record only supports it. In light of this record, we can only conclude that the district court clearly erred when it denied a reduction for acceptance of responsibility because Soler's acceptance "is now coming at the time of the sentencing, not at the time of trial." At the October 2, 1995 sentencing hearing the district court had

before it the following facts from the presentence investigation report, which was prepared on June 9, 1995, and revised and finalized on July 6, 1995: (1) Soler's statement that he had attempted to plead guilty on two occasions shortly following indictment, a plea that the government refused to accept because Soler would not plead guilty to being involved with a greater amount of cocaine; and (2) Soler's acknowledgment and description of his involvement with two one-kilogram cocaine transactions. Further, the district court had before it the objections, dated July 6, 1995, to the presentence investigation report that provided a clear statement that the probation office understood that Soler had accepted responsibility for his involvement with two kilograms of cocaine, but recommended against the reduction only because of the five-kilogram issue, which it left for the court to decide. Thus, when the district court sentenced Soler on October 2, 1995, the information as to Soler's position on the two kilograms was in the record some four months, or at the very least nearly three months.

After the district court made a finding that Soler was only involved with two kilograms of cocaine, the court had squarely before it the issue of Soler's acceptance of responsibility. The district court, however, failed to fully consider the issue, but instead summarily denied the reduction because Soler's acceptance came at the time of sentencing, not at the time of trial.

The commentary to section 3E1.1 on acceptance of responsibility, further clarifies our analysis. Application note 1(a) lists examples of appropriate considerations in determining whether a defendant qualifies for a reduction for acceptance of responsibility. One consideration is truthfully admitting the conduct comprising the conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the

defendant is accountable.  The commentary continues:  "[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." U.S.S.G. § 3E1.1 comment. (n.1(a)).  In our case, Soler admitted he was involved with two kilograms, but denied involvement with a five-kilogram quantity.  The district judge, moreover, found Soler only responsible for two kilograms.

Application note 2 states that the adjustment does not apply to a defendant who puts the government to its burden of proof by denying the essential factual elements, and only then admits guilt and expresses remorse.  We emphasize, however, that conviction by trial does not automatically prevent a defendant from receiving a reduction for acceptance of responsibility.  See, e.g. United States v. McKinney, 15 F.3d 849, 851-54 (9th Cir. 1994), cert. denied, 116 S. Ct. 162 (1995) (defendant granted a reduction for acceptance of responsibility even though he had already been convicted at trial where district court thwarted defendant's attempts to plead guilty).  A defendant may demonstrate acceptance of responsibility even though he goes to trial and is convicted, which may occur when he asserts and preserves issues that did not relate to factual guilt.  See U.S.S.G. § 3E1.1, comment. (n.2).  In such a situation a determination that a defendant has accepted responsibility will be based primarily on pre-trial statements and conduct.  See id.

We conclude that this case fits within this commentary and case law. Soler was at all times ready to plead guilty to two kilograms.  The government, however, refused to accept his plea unless he would admit to his involvement with five kilograms.  By refusing to accept Soler's guilty plea, the government gave Soler

no choice but to go to trial. Ultimately, however, the district court found Soler responsible for only two kilograms, the amount for which Soler was at all times willing to plead guilty. Given these facts, it was clearly erroneous for the district court to conclude that Soler's acceptance of responsibility came at sentencing, and not at the time of trial.

Accordingly, because we conclude that the district court clearly erred and that therefore Soler's sentence was the result of an incorrect application of the sentencing guidelines, we vacate his sentence and remand the case to the district court for further proceedings. On remand the district court should reconsider a reduction for acceptance of responsibility based on Soler's willingness to enter a guilty plea for his involvement with two kilograms of cocaine before trial and during the preliminary proceedings to sentencing. See 18 U.S.C. § 3742 (f)(1) (1994).

Finally, we instruct the district court to correct the base offense level given to Soler. During the sentencing hearing the probation officer incorrectly stated that the base offense for distributing two kilograms of cocaine was 26. The correct level, however, is 28. See U.S.S.G. § 2D1.1(c).

We thus affirm all of the convictions, and the sentences imposed on Guerrero-Cortez and Gonzalez-Gonzalez, but reverse Soler's sentence and remand to the district court for reconsideration of a reduction for Soler's acceptance of responsibility and to correct the base level offense given to Soler.

A true copy.

Attest:

  CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.