# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

### Nos. 98-1611EM, 98-1612EM, 98-1694EM
_____

_____

No. 98-1611EM
_____

United States of America,

          Appellee,

v.

Rossi Garrison,

          Appellant,

_____

No. 98-1612EM
_____

United States of America,

          Appellee,

v.

Isaac Pike,

          Appellant,

On Appeal from the United
States District Court
for the Eastern District
of Missouri.

```
                                        *
                                        *
     _____                        *
                                        *
   No. 98-1694EM                        *
     _____                        *
                                        *
United States of America,               *
                                        *
           Appellee,                    *
                                        *
   v.                                   *
                                        *
                                        *
Natasha Batey,                          *
                                        *
           Appellant.                   *
```

_____

Submitted:  November 17, 1998

Filed:  February 22, 1999

_____

Before RICHARD S. ARNOLD and FAGG, Circuit Judges, and DAWSON,[1] District
     Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

Rossi Garrison, Isaac Pike, and Natasha Batey appeal their convictions stemming from their involvement in a drug-distribution conspiracy, raising various evidentiary and sentencing issues.  We affirm.

---

[1]The Hon. Robert T. Dawson, United States District Judge for the Western District of Arkansas, sitting by designation.

I.

On August 14, 1997, a superseding indictment was filed against sixteen people, including the defendants, for their involvement at least since 1989 in a conspiracy to distribute cocaine in the St. Louis, Missouri, area. The indictment alleged, among other things, that Garrison, Pike, and others had arranged for couriers to travel back and forth between Los Angeles and St. Louis, transporting cocaine and the funds needed for its purchase. Garrison, Pike, and Batey went to trial, and fourteen couriers testified against them. All three defendants were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1994). In addition, Garrison and Pike were convicted of money laundering in violation of 18 U.S.C. § 1956(h) (1994). Pike was also convicted of six additional counts of money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (1994) and 18 U.S.C. §§ 1957(a) and 2 (1994). Garrison and Pike were each sentenced to thirty years in prison. Batey was sentenced to seventeen and a half years in prison. All three defendants were sentenced to five-year terms of supervised release.

II.

Garrison and Pike first argue that the District Court[2] erred in allowing one of the couriers, Beverly Jean Armstrong, to testify that she had received a threatening telephone call, a couple of days before her cooperation with the government, from someone who identified himself as "Ike." Law enforcement agents investigating the conspiracy had approached several of the couriers. Armstrong, who had made four trips to California, testified that Mary Jane Coffman, who had recruited her, told her that the agents had talked to several other members of the conspiracy. The agents eventually contacted Armstrong and, on January 22, 1996, a Monday, they

---

[2]The Hon. Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

interviewed her. On the Friday before, Armstrong testified, she received a telephone call from someone with a male voice who identified himself as "Ike." She testified that "he informed me that I wasn't to say anything. I was to keep quiet; and that if I didn't, then I -- they were going to do something to me and my daughter." (Trial Tr., Nov. 13, 1997, at 11.) This testimony was allowed over the objections of defense counsel.

On appeal, Garrison and Pike claim that the statements should not have been admitted. Since Armstrong had never met Isaac Pike and was not familiar with his voice, they argue, the foundation for authenticating the telephone conversation was not properly laid. The defendants also claim that the testimony should have been excluded under Fed. R. Evid. 403, because of its highly prejudicial nature, and under Fed. R. Evid. 404(b), as evidence of other crimes inadmissible to prove character. In addition, they argue that a jury instruction based upon this testimony was improperly given.

In order to allow the courier to testify about the threatening phone call, the District Court had two tasks. First, it must have concluded that there was enough evidence to justify a finding that "Ike" was one of the defendants. Second, the Court was required to decide that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. Having reviewed carefully the transcript, we find nothing to suggest that the District Court abused its broad discretion in admitting the testimony. Armstrong did not testify (and, of course, could not testify) that the "Ike" who threatened her was the defendant Isaac Pike. With respect to the phone call itself, her testimony was only that she had received a call from someone who identified himself as "Ike," and that the caller had threatened her. She also testified, however, that she understood from conversations with Mary Jane and George Coffman that the person they were working for was named "Ike," that she herself would be traveling to California for "Ike," and that "he would pay me if I made these trips for him." (Trial Tr., Nov. 12, 1997, at 135.) In addition, she

testified that the voice that threatened her did not belong to any of the other males she knew who were involved in the conspiracy, and, as the government asserts, the only "Ike" involved in the conspiracy was Isaac Pike.

We believe the circumstances surrounding the telephone call satisfy the requirements of Fed. R. Evid. 901(a), which provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." While the mere assertion by a person talking on the telephone of his or her identity is not sufficient evidence of the authenticity of the conversation, the requisite additional evidence "need not fall in any set pattern." Fed. R. Evid. 901 advisory committee's note, ex. 6. Indeed, a "telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." Fed. R. Evid. 901 advisory committee's note, ex. 4.

Garrison and Pike argue that testimony by Armstrong of the telephoned threat was not relevant because it was not similar in kind to the crime charged. They were on trial for conspiracy, however, and "[a]cts committed in furtherance of a conspiracy are admissible as circumstantial evidence that the agreement existed . . .." United States v. Madrigal, 152 F.3d 777, 780 (8th Cir. 1998) (citing United States v. Dierling, 131 F.3d 722, 730 (8th Cir. 1997)). This testimony bears directly on the issue of conspiracy. It is evidence of the agreement Armstrong entered into to carry drugs, and it is evidence of the length to which the conspirators would go to conceal the existence of the conspiracy. Accordingly, we hold that the District Court did not abuse its discretion in concluding that the probative value of the evidence outweighed its unfairly prejudicial effect.

The defendants' claim that the District Court improperly instructed the jury with respect to the threat is also without merit. The disputed instruction reads as follows:

> Attempts by a defendant to influence a witness in connection with the crime charged in this case may be considered by you in light of all the other evidence in the case. You may consider whether this evidence shows a consciousness of guilt and determine the significance to be attached to any such conduct.

(Appellant's Addendum at 44.) Evidence of threats against witnesses is routinely admitted against criminal defendants to show consciousness of guilt. See United States v. Guerrero-Cortez, 110 F.3d 647 (8th Cir. 1997); United States v. Dittrich, 100 F.3d 84 (8th Cir. 1996); United States v. DeAngelo, 13 F. 3d 1228 (8th Cir. 1994). In addition, the instruction given by the District Court is a correct statement of the law. United States v. Grajales-Montoya, 117 F.3d 356 (8th Cir. 1997).

Garrison argues separately that there was no evidence that he was involved in threatening Armstrong, and that he was prejudiced because the jury may have found him guilty by virtue of his association with Pike. The government presented sufficient evidence at trial from which a reasonable jury could conclude that Garrison was a member of the conspiracy (even he does not claim that the evidence against him was insufficient), and it is well settled that members of a conspiracy are responsible for acts committed by co-conspirators in furtherance of the conspiracy. We find no error in the District Court's instruction.

III.

We turn next to Garrison's and Pike's argument that the District Court should have prohibited the government from introducing evidence of conduct that occurred before the conspiracy was formed. The defendants object specifically to the testimony of Shawn Staten, who testified that she sold cocaine to a person named

"Cecil" in late 1982, and that "Cecil" had been accompanied by someone named "Cuffy." Staten later began selling cocaine regularly to "Cuffy," and, through him, met Garrison and Pike. When "Cuffy" was arrested, the government alleged, Garrison and Pike stepped in and arranged to purchase drugs from Staten. When Staten herself was arrested in 1989, Garrison and Pike approached Staten's mother, Johnetta Braxton, and the arrangement, with advice from Staten in prison, continued. Braxton arranged for her mother, Rebecca Staten, to act as a courier, and Garrison and Pike arranged to provide couriers from St. Louis. Although Garrison and Pike were not participants in the original transactions with "Cuffy" and "Cecil," those transactions were the genesis of the conspiracy that would later be formed when "Cuffy" and Shawn Staten were arrested. This testimony is direct evidence of the establishment and structure of the conspiracy, and it was not error to allow its introduction. See United States v. Rodrequez, 859 F.2d 1321 (8th Cir. 1988).

IV.

Garrison and Pike argue that the District Court should have allowed cross-examination of Eddie Marshall, one of the couriers, on the subject of a sexual relationship he allegedly had with another witness, Mary Jane Coffman. The defendants sought to question Marshall on that subject in order to demonstrate bias or prejudice. The defendants claim that the District Court's refusal to allow such questioning also prevented them from establishing inconsistencies in the testimony of different witnesses. This argument is without merit. Coffman testified before Marshall, and was cross-examined at length. She testified that Marshall was a drug courier, and, with respect to Marshall, this was the extent of her testimony, which was corroborated by two other witnesses. When Marshall's turn came, he testified that Coffman had recruited him as a courier. The District Court did not err when it prohibited cross-examination of Marshall on the subject of the alleged relationship. Any tendency of the relationship to show bias or interest on Marshall's part was

remote, and the District Court did not abuse its discretion in limiting this aspect of the cross-examination of Marshall.

V.

Garrison next argues that the government introduced evidence that it knew to be false, and that it failed to disclose exculpatory evidence. He claims that plane tickets and other business records introduced into evidence during the testimony of Robert Aguilar, the owner of a travel agency used by the couriers, were fabricated; that, in some instances, there is no record of the scheduled flights; and that testimony about the flights was falsified. Garrison offers no credible evidence to support these charges, which are based upon conflicts between the records and testimony given at trial. In one example, a flight record suggests that a witness arrived at 4:19 in the morning, while a law-enforcement agent who seized cocaine from the witness upon her arrival testified that he worked from 3 p.m. to 11 p.m. that day. According to the government, the record cited by Garrison concerns a flight from the previous day. In another example, Kim Su Blanchard testified that she met Pike at his home on March 24, 1995, during the day, to pick up her payment for transporting a shipment of cocaine from Los Angeles. An exhibit offered by the government indicates, however, that Blanchard had a ticket for a flight that was not scheduled to arrive in St. Louis until 9:57 that evening. The government acknowledges the discrepancy, suggesting that the conflict may reflect on Blanchard's credibility, but argues that, in any event, it is not evidence of fabrication. There is also the testimony of Aaron Quinn, who testified that he and his traveling companion, Mary Bell, met with Brian Cotton and Gail Davis shortly after they returned from Los Angeles. According to Garrison, Quinn's testimony was inconsistent with an unrelated travel record which suggested that Brian Cotton was in California that day. As the government notes, however, there was evidence that the couriers often flew under names other than their own.

We have cited only three of Garrison's examples, but we believe none of them has merit. His complaints go to the weight, not the admissibility, of the evidence, and any inconsistencies between the records and the testimony were for the jury to resolve.

## VI.

Pike claims that the District Court should have allowed his counsel to read portions of his medical records to the jury. The records, which were introduced into evidence, described, at least in part, dialysis treatments that Pike was undergoing during the course of the conspiracy. Had his counsel been able to read the records to the jury, Pike argues, the jurors would have "know[n] that [he] could not have engaged in the drug-related activity that some Government witnesses said that he was . . .." (Appellant's Br. at 22.) The records were given to the jury to consider during deliberations, but the Court denied Pike's request to have them read to the jury, suggesting instead that counsel summarize them. Pike's counsel did not do this, nor did he call attempt to call any witness to do so. We see no error here.

## VII.

Garrison and Pike argue that the District Court erred in sentencing them each to thirty years in prison. An objection to a two-level increase for obstruction of justice is the basis for Pike's claim. Because of the amount of drugs involved in the conspiracy, the Court set Pike's base offense level at 36. Pursuant to U.S.S.G. § 3B1.1(a), he received a four-level increase for his role as an organizer or leader of a criminal activity that involves five or more persons. His two-level increase for obstruction of justice under U.S.S.G. § 3C1.1 stemmed from the telephone threat against Beverly Armstrong, and he argues that there was insufficient evidence to support the enhancement. For the same reasons we have set out earlier in this opinion, we disagree. The District Court's finding that Pike threatened Armstrong

was not clearly erroneous, and the Court acted within its discretion in enhancing his sentence.

Garrison's argument is based upon a claim that the Court erred with respect to the amount of drugs attributable to him. The amount of cocaine involved in the conspiracy was found to be between 50 and 150 kilograms, and, accordingly, his base offense level was set at 36. Like Pike, Garrison received a four-level increase for his leadership role. The District Court sustained Garrison's objection to a two-level increase for possession of a dangerous weapon, leaving him was a total offense level of 40, and an imprisonment range of 292 to 365 months. Garrison claims the amount of drugs attributable to him was "unsupported." We disagree. The calculation of drugs bought and sold during the life of the conspiracy was based upon the testimony of more than a dozen couriers. We believe there was ample evidence to support the District Court's finding.

## VIII.

Natasha Batey contends that the evidence against her was insufficient to support a finding of guilt. To support a conviction for a conspiracy under 21 U.S.C. § 846, the government must show an agreement between at least two people, the objective of which was a violation of the law. United States v. Maejia, 928 F.2d 810 (8th Cir. 1991). A conspiracy need not be proved by direct evidence, but may be inferred from circumstantial evidence. United States v. Foote, 898 F.2d 659 (8th Cir. 1990).

We must consider the evidence in the light most favorable to the government. The evidence was that Garrison and Pike formed an agreement to purchase cocaine supplied by a number of persons in California, and, in the course of the conspiracy, hired other persons to act as couriers. With respect to Batey, we believe there was sufficient evidence to justify a reasonable jury in concluding beyond a reasonable

-10-

doubt that she participated in the conspiracy. There was testimony from one of the couriers, Batrice Robinson, that Batey was present when Pike gave her the money for her first trip to Los Angeles, and that Batey met her, paid her, and took possession of the cocaine she brought from Los Angeles. Robinson also testified that Batey contacted her about making a second trip to Los Angeles, provided her with an airline ticket and money, and, again, met her upon her return and took possession of the cocaine. There was testimony from another courier, Brian Cotton, that Batey assisted Pike when Cotton was being provided money necessary for the purchase of cocaine in Los Angeles.

Batey also argues that the District Court erred when it enhanced her sentence for being a manager or supervisor pursuant to U.S.S.G. § 3B1.1. She argues, in fact, that she should have received a decrease under U.S.S.G. § 3B1.2 because her participation in the conspiracy was minor. We disagree on both points. First, we have held that a defendant need only supervise "one or more other participants" to be subject to an enhancement for being a manager or supervisor. United States v. Pena, 67 F.3d 153, 157 (8th Cir. 1995). In addition, the enhancement may apply even if the management activity was limited to a single transaction. United States v. Flores, 73 F.3d 826, 835-36 (8th Cir. 1996). The evidence supports the finding that Batey acted as a manager or supervisor, or, at least, the District Court was not clearly erroneous in so finding. As the Court noted at sentencing, "there was . . . direct testimony from Batrice Robinson that she got instructions from Miss Batey." (Sentencing Tr. at 108.)

Second, there is no merit to Batey's other sentencing argument, that she should have received a decrease under U.S.S.G. § 3B1.2 because her participation in the conspiracy was minor. To be a minor participant, Batey must have been "less culpable than most other participants." U.S.S.G. § 3B1.2, comment. n.3. As we have discussed, there was ample evidence presented at trial that Batey was involved in the conspiracy to transport cocaine from California and to deliver money to California from St. Louis, and that she managed or supervised at least one other participant.

-11-

Batey may not have been among the most culpable in the conspiracy, but we cannot say the District Court erred in finding that she was not entitled to a reduction in her sentence for being a minor participant.

## IX.

Garrison has filed a <u>pro se</u> reply brief, which we have considered. He has also filed <u>pro se</u> motions, which we have considered, for remand, for a new trial, to correct his sentence, and for release pending appeal. The motions are denied. Most of the points urged in them have been addressed in this opinion. The others are not significant, and we do not believe they deserve further discussion.

The judgments are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT