# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1599

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Kevin Joseph Nadeau, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 9, 2010
Filed: March 19, 2010

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury trial, Kevin Joseph Nadeau was convicted of one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153, and one count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. Nadeau appeals his convictions, arguing that the district court[1] erred in admitting a metal pipe, identified at trial as Government Exhibit 3, into evidence at trial. For the following reasons, we affirm.

_____

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

On November 8, 2007, a group of five individuals (James Bruce, Bradley Bruce, Donald Decoteau, Leon Peltier, and Brian Poitra, Jr.) spent the evening at Norman's Bar in Belcourt, North Dakota. At the end of the evening, they left in a vehicle driven by James Bruce and owned by Joey Short. While in the car, one of the men needed to answer the call of nature, so James Bruce pulled over on a gravel road near the home of Kevin and Kristy Nadeau. Kristy Nadeau was formerly married to John Short, Joey Short's brother, and the Nadeaus had a history of conflict with the Short family. Thus, when the Nadeaus saw Joey Short's vehicle near their home, they believed the Shorts had come back to cause problems.

Kevin and Kristy Nadeau and two minors, R.N. and J.V., got into a car, and there was testimony that Nadeau had retrieved a pipe or bar and had it with him in the car. Other witnesses said that the pipe was already in the car. The Nadeau group followed the car that James Bruce was driving. James Bruce pulled over after the car containing the Nadeaus flashed its lights at him. As James Bruce walked towards the vehicle that flashed its lights at him, one witness testified that Nadeau struck James in the face with the pipe. James Bruce was taken to the hospital and suffered from a fracture of the left cheek bone, which required surgery.

Responding to a call, police came to the Nadeau home and observed a maroon Oldsmobile, identified as the vehicle Nadeau had ridden in on the night of the attack, parked in Nadeau's yard. Inside the car was the pipe later identified at the trial as Government Exhibit 3, and the police removed it through an open window.

A grand jury charged Nadeau with one count of assault resulting in serious bodily injury and one count of assault with a dangerous weapon. Before the trial, Nadeau filed a motion in limine to prevent the Government from introducing the metal pipe found in the car. Nadeau argued that the pipe should not be admitted into

evidence because the officers who seized the pipe did not see anything on the pipe indicating the presence of blood or human tissue and police did not find fingerprints on the pipe that could be used for comparison purposes. Nadeau argued the pipe was not relevant because nothing connected it to the criminal conduct with which he was charged. The district court denied the motion in limine, finding the pipe to be relevant evidence. At the trial, Nadeau objected when the Government offered the pipe as Government Exhibit 3. The district court overruled Nadeau's objection and admitted the pipe into evidence.

Nadeau was convicted on both counts and was sentenced to 51 months' imprisonment on each of the counts, to be served concurrently. Nadeau appeals the district court's denial of his motion in limine and the overruling of his objection at trial.

II.

Nadeau argues that the pipe was not relevant and not admissible because there was insufficient evidence connecting it to Nadeau or to the assault and that the admission of the pipe was unfairly prejudicial.

"In assessing a district court's evidentiary rulings, we review for an abuse of discretion." United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007).

First, Nadeau asserts that the pipe was not relevant and the Government failed to present evidence connecting it to Nadeau or the assault because there was no hair, blood, or fingerprints on the pipe. "'The trial court has broad discretion in determining the relevancy and admissibility of evidence.'" Id. (quoting United States v. Wallace, 722 F.2d 415, 416 (8th Cir. 1983)). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." Fed. R. Evid. 401. "The threshold for relevance is 'quite minimal.'" United States v. Holmes, 413 F.3d 770, 773 (8th Cir. 2005) (quoting United States v. Guerrero-Cortez, 110 F.3d 647, 652 (8th Cir.), cert. denied, 522 U.S. 1017 (1997)). "All relevant evidence is admissible, except as otherwise provided by the Constitution, legislation, or applicable evidentiary rules, and conversely, all irrelevant evidence is inadmissible." Id.

Here, Nadeau was charged with assault with a dangerous weapon. There was much testimony throughout the trial that Nadeau assaulted James Bruce with a pipe-like object. Bradley Bruce testified that he saw Nadeau hit James Bruce with an object in his hand and later hit him with what he described as a silver object. Leon Peltier testified that he observed James Bruce being struck by two men and they were hitting him with a pole and what looked like a red tire iron. He further testified that Nadeau came at Peltier with the pole. He identified the pipe admitted into evidence as Government Exhibit 3 as one of the objects that could have been used to strike James Bruce. Donald Decoteau testified that Nadeau hit James Bruce in the head with a pipe, which he described as a round bar. Brian Poitra, Jr., testified that two men were hitting James Bruce with bar-type weapons. He testified that although he was not able to get a good look at the object used to strike James Bruce, the pipe admitted as Government Exhibit 3 looked pretty close to what had been used. Nadeau's minor nephew, R.N., testified that he was present when Nadeau struck James Bruce with the pipe. He testified that Nadeau brought a bar or bar-like tool along in the car when they followed James Bruce's vehicle and the pipe admitted as Government Exhibit 3 was the pipe Nadeau used to strike James Bruce on the head and back. The pipe was removed from a car identified as the vehicle Nadeau was riding in on the night of the attack, and Kristy Nadeau and Nadeau's minor niece, J.V., testified that the pipe was in the vehicle on the night of the attack. The evidence was relevant because it had the tendency to make the existence of Nadeau's attack on James Bruce more probable and it had a tendency to prove that the attack was carried out by employing a dangerous weapon. See Fed. R. Evid. 401.

-4-

While Nadeau correctly notes that there was no blood, tissue, or fingerprints on the pipe, that was a matter for the jury to consider when it determined what weight, if any, to give to the pipe. It also was a factor for the court to consider in determining the pipe's admissibility, but it certainly did not make the pipe irrelevant to the issues before the jury. See, e.g., United States v. Garrison, 168 F.3d 1089, 1094 (8th Cir. 1999) ("[Defendant's] complaints go to the weight, not the admissibility, of the evidence, and any inconsistencies between the records and the testimony were for the jury to resolve."). There was sufficient evidence presented which tied the pipe both to Nadeau and to the charged crimes to warrant its admission for the jury's consideration.

Nadeau also contends that the admission of the pipe as evidence was unfairly prejudicial because it required the jury to draw inferences based on speculation and conjecture. Even if evidence is relevant, it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "We give deference to a district court's decision under the Rule 403 balancing test and reverse only for a clear abuse of discretion." Guerrero-Cortez, 110 F.3d at 652. "Unfair prejudice 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" Id. (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)). Unfair prejudice does not occur, however, merely because a piece of evidence damages a defendant's case. Id.

The district court did not clearly abuse its discretion in determining that the pipe's probative value was not substantially outweighed by the danger of unfair prejudice. Again, the inference—that Nadeau used the pipe in the assault—is one for the jury to draw, and the lack of blood, tissue, and fingerprints on the pipe is something for the jury to consider in determining how much weight to give the pipe. The pipe was useful in establishing that an object matching the witnesses' description was found in the car Nadeau was riding in on the night of the attack. Beyond claiming

that the pipe required the jury to make too many inferences, Nadeau offered nothing to demonstrate that admission of the pipe was *unfairly* prejudicial, and there is no reason to believe that the pipe would have lured the jury into declaring guilt on an improper basis. Accordingly, Nadeau failed to prove that the probative value of the pipe was substantially outweighed by the danger of unfair prejudice. Thus, the district court did not abuse its discretion in denying Nadeau's motion in limine before trial or in overruling Nadeau's objection at trial. See Jiminez, 487 F.3d at 1145.

III.

Accordingly, the judgment of the district court is affirmed.

_____